IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| LYNWOOD EDWARDS, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:11-CV-154 (WLS) |
| | : | |
| FOOD GIANT SUPERMARKETS, INC. | : | |
| d/b/a PIC N SAV, | : | |
| | : | |
|     Defendant. | : | |
| | : | |

**ORDER**

    Presently pending before the Court is Defendant Food Giant Supermarkets, Inc.'s Motion for Summary Judgment (Doc. 19). For the following reasons, Defendant Food Giant Supermarkets, Inc.'s Motion for Summary Judgment (Doc. 19) is **GRANTED.**

**I.    PROCEDURAL HISTORY**

    Plaintiff Lynwood Edwards, an African American male, worked for Defendant from December 7, 2010 until February 8, 2011. (Doc. 1 at ¶ 6.) He had previously worked for the Pic-N-Sav in Albany, Georgia, which was owned by Defendant's predecessor in interest, ABBC, Inc., until the store was purchased by Defendant. (Doc. 19-17 at ¶ 1.) On October 28, 2011, by and through counsel, Plaintiff filed a complaint in the above-captioned matter, asserting claims for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.* (Doc. 1.) On November 28, 2011, Defendant filed an Answer. (Doc. 4.)

    On April 3, 2013, Defendant moved for summary judgment on all claims in Plaintiff's complaint. (Doc. 19.) In support of summary judgment, Defendant contends: 1) Plaintiff's claims do not establish a prima facie case of race discrimination; 2) Defendant has established a legitimate nondiscriminatory reason for Plaintiff's termination; and 3) Plaintiff has failed to meet its burden of raising a factual issue that Defendant's reason for terminating him was pretext for discrimination. (*See* Doc. 19-18.)

1

On May 13, 2013, Plaintiff filed a response in opposition to Defendant's Motion for Summary Judgment. (Doc. 23.) On May 28, 2013, Defendant filed a reply. (Doc. 26.) Thus, the above-referenced motion is ripe for review. *See* M.D. GA. L.R. 7.3.1(a).

## II.  SUMMARY JUDGMENT STANDARD
### A.  Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, No. 12-14291, 2014 WL 114125, *2 (11th Cir. Jan. 14, 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid

summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* FED. R. CIV. P. 56(c)(4).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c).

### B. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. GA. L.R. 56. Here, Defendant properly filed a summary judgment motion with a statement of undisputed facts, as is required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Docs. 19-17, 19-18.) Likewise, Plaintiff filed the proper response to Defendant's statement of material facts. (Doc. 24.) Having established the applicable standards, the Court will proceed to the facts.

3

## III.  RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Defendant's Answer (Doc. 4); Defendant's Statement of Undisputed Facts (Doc. 19-17); and Plaintiff's Response to Plaintiff's Statement of Disputed Material Facts (Doc. 24); and the record in this case.  Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  *See* FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 322-23.

Defendant is a grocery store company that has stores located throughout the United States, and is entirely owned by its employees.  (Docs. 19-17 at ¶ 1, 24 at ¶ 1.) Defendant purchased the Pic-N-Sav in Albany, Georgia, on December 8, 2010.  (Docs. 19-17 at ¶ 2, 24 at ¶ 2.)  Plaintiff worked for the former owner of Pic-N-Sav and was retained by Defendant as the produce manager following the purchase of the store. (Docs. 19-17 at ¶ 3, 24 at ¶ 3.)  Plaintiff worked for Defendant until February 9, 2011. (*Id.*)  Approximately two weeks after Plaintiff's termination, Defendant promoted Joel Shivers, an African American male, to replace Plaintiff as Defendant's produce manager at its Albany, Georgia, location.  (Docs. 19-17 at ¶ 5, 24 at ¶ 5.)  Seventy-eight percent of the employees at Defendant's Albany, Georgia, location were African American at the time Plaintiff was in its employ.  (Docs. 19-17 at ¶ 6, 24 at ¶ 6.)

On February 8, 2011, Plaintiff asked the assistant manager, Lee Johnson, what he was supposed to do with a shipment of flowers.  (Docs. 19-17 at ¶¶ 9 & 11, 24 at ¶¶ 9 & 11.)  The store had just started carrying flowers and that product fell within Plaintiff's range of responsibilities, although Plaintiff was unaware that such was his responsibility at that time.  (*See* Doc. 19-7 at 108.)  Lee Johnson responded by stating, "You're the produce manager.  Figure it out."  (Docs. 19-17 at ¶ 11, 24 at ¶ 11, 25-1 at ¶ 8.)  Plaintiff put the flowers aside and stated that he would wait for the store manager, Darrell Johnson, to return.  (Docs. 19-17 at ¶¶ 14 & 15, 24 at ¶¶ 14 & 15, 25-1 at ¶ 9.) Because Plaintiff perceived Lee Johnson as being rude, he walked away from him and into the back room.  (Docs. 19-17 at ¶ 18, 24 at ¶ 18, 25-1 at ¶ 9.)  Plaintiff began relaying

4

the events that had just occurred to Charles Ferrell.  (Doc. 25-1 at ¶ 10.)  Lee Johnson subsequently followed Plaintiff into the back room and Plaintiff told Lee Johnson that he was talking to Charles Ferrell, not Lee Johnson.  (Docs. 19-17 at ¶ 19, 24 at ¶¶ 19 & 20, 25-1 at ¶ 10.)  Plaintiff told Lee Johnson that he was not going to let him talk to him that way and he "ha[d] a smart mouth."  (Docs. 19-17 at ¶¶ 13 & 20, 24 at ¶¶ 13 & 20.)

Lee Johnson accused Plaintiff of stating that he did not like his "damn job," and Plaintiff replied "I didn't say I didn't like my damn job[,] I said I wasn't going to let you talk to me like that."  (Docs. 19-17 at ¶ 21, 24 at ¶ 21, 25-1 at ¶ 11.)  Plaintiff also told Lee Johnson that Lee Johnson was "not a team player because he thinks he knows everything."  (Docs. 19-17 at ¶ 22, 24 at ¶ 22.)  Lee Johnson said to Plaintiff, "Hell, you can clock out."  (Doc. 19-8 at 8 lns. 13-18, 25-1 at ¶ 12.)  Plaintiff responded, "Hell, no, I'm not clocking out because you're not going to talk to me that way."  (Docs. 19-8 at 8 lns. 13-18, 19-17 at ¶ 23, 24 at ¶ 23, 25-1 at ¶ 12.)  Lee Johnson told Plaintiff that he would clock Plaintiff out, and walked to the front of the store to call Darrell Johnson.  (Docs. 19-17 at ¶ 25, 24 at ¶ 25, 25-1 at ¶¶ 14-16.)  Because Plaintiff thought Lee Johnson clocked him out, he did not clock himself out.  (Doc. 25-1 at ¶ 15.)  Plaintiff walked out of the store shortly thereafter.  (Doc. 19-8 at 12 lns. 7-11.)  While Plaintiff was walking out, Lee Johnson "was waving his hand, telling [Plaintiff] bye-bye."  (*Id.* at 14 lns. 11-12, Doc. 25-1 at ¶ 17.)  At that point, Plaintiff turned around and said "that's why we're in the predicament we're in now, because of [Lee Johnson's] mouth."  (Docs. 19-8 at 12 at lns. 2-5, 25-1 at ¶ 18.)

While Lee Johnson and Darrell Johnson were on the telephone as Plaintiff left the parking lot, Darrell Johnson told Lee Johnson to start gathering statements from potential witnesses and call Peggy Gates, Defendant's corporate Human Resources Manager.  (Docs. 19-17 at ¶¶ 27-29, 24 at ¶¶ 27-29.)  Lee Johnson complied and was told by Peggy Gates to gather witness statements.  (Docs. 19-17 at ¶ 30, 24 at ¶ 30.)  The witnesses to the event were Carrie Nixon, an African American female and assistant produce manager; Edwin Butler, a Caucasian male and former grocery manager; Charles Ferrell, an African American male and former stock clerk; and Brian Patterson,

5

a Caucasian male and former night manager. (Docs. 19-17 at ¶ 31, 24 at ¶ 31.) Lee Johnson asked those witnesses for written statements. (Docs. 19-17 at ¶ 32, 24 at ¶ 32.)

Each of the above-referenced witnesses was deposed and stated during their depositions that their previous statements were accurate. (Docs. 19-17 at ¶ 35, 24 at ¶ 35.) Carrie Nixon gave her statement to Darrell Johnson. (Docs. 19-17 at ¶ 38, 24 at ¶ 38.) Darrell Johnson prepared a statement for Edwin Butler, which he reviewed and signed. (Doc. 19-15 at 21.) Charles Ferrell started working on his statement when Lee Johnson was present but gave the statement to Darrell Johnson. (Docs. 19-17 at ¶ 37, 24 at ¶ 37.) Darrell Johnson helped Charles Ferrell complete his statement.[1] (Docs. 19-17 at ¶ 41, 24 at ¶ 41.) Brian Patterson provided his statement to Darrell Johnson when he arrived at the scene. (Docs. 19-17 at ¶ 36, 24 at ¶ 36.) Lee Johnson provided two statements. (Docs. 19-17 at ¶ 39, 24 at ¶ 39.) Darrell Johnson also wrote a statement regarding what he overheard Plaintiff say while on the telephone with Lee Johnson. (Docs. 19-17 at ¶ 44, 24 at ¶ 44.)

Approximately three hours following the incident, Plaintiff returned to the store to talk with Darrell Johnson. (Docs. 19-17 at ¶ 46, 24 at ¶ 46.) Plaintiff told Darrell Johnson his side of the story, but was not permitted to give a written statement. (*Id.*; Doc. 25-1 at 4.) Darrell Johnson contacted Peggy Gates and related the statements he had gathered from the various witnesses. (Docs. 19-17 at ¶ 48, 24 at ¶ 48.) After he consulted with Peggy Gates, Darrell Johnson made the decision to terminate Plaintiff.[2] (Docs. 19-3 at 6-7, 19-13 at 11-12, 19-17 at ¶ 49, 24 at ¶ 49.) Plaintiff was not given the opportunity to provide a written statement until he spoke with Peggy Gates but was told that it would not change the outcome. (Doc. 25-1 at ¶ 26.)

---

[1] Plaintiff notes that it is "[a]mitted that Darrell Johnson wrote a statement on behalf of Charles Ferrell [but d]enied that Mr. Ferrell read and reviewed the statement Darrell Johnson wrote, as there is a question as to whether or not Mr. Ferrell is literate." (Doc. 24 at ¶ 41.)

[2] Plaintiff states that "Defendant admitted that Lee Johnson also participated in the decision to terminate Plaintiff." (Doc. 24 at ¶ 49.) In support of this contention, Plaintiff points to "Defendant's Response to Plaintiff's First Interrogatories, No. 4." (*Id.*) The answer to that interrogatory does not state that Lee Johnson participated in that decision. Instead, it states that Lee Johnson "[b]egan the investigation process and initially suspended Plaintiff pending investigation." (Doc. 19-3 at 7.) The evidence in the record does not support Plaintiff's contention to the contrary. There is no evidentiary dispute that Lee Johnson was not involved in the decision to fire Plaintiff. (*See* Doc. 19-13 at 11-12.)

6

In their statements, Carrie Nixon and Brian Patterson stated that they saw Plaintiff walk away from Lee Johnson while Lee Johnson was "attempting to address the flower situation in the produce department."[3] (Docs. 19-17 at ¶ 52, 24 at ¶ 52.) Charles Ferrell, Carrie Nixon, and Brian Patterson reported that Plaintiff "refus[ed] to clock out after his supervisor directed him to do so." (Docs. 19-17 at ¶ 53, 24 at ¶ 53.) Carrie Nixon, Brian Patterson, Lee Johnson, and Darrell Johnson stated that Plaintiff used profanity.[4] (Docs. 19-17 at ¶ 54, 24 at ¶ 54.)

Charles Ferrell reported that Plaintiff told Lee Johnson " 'to get out of his face,' although Lee Johnson was not in his face." (Docs. 19-17 at ¶ 55, 24 at ¶ 55.) Charles Ferrell also stated that Plaintiff told Lee Johnson to get out of the back room. (Docs. 19-17 at ¶ 56, 24 at ¶ 56.) Brian Patterson, Lee Johnson, and Darrell Johnson stated that Plaintiff referred to Lee Johnson's mouth in association with various profanity laden phrases.[5] (Docs. 19-17 at ¶ 57, 24 at ¶ 57.) Brian Patterson reported that he believed that Plaintiff was threatening Lee Johnson and intended to get into a physical altercation with him. (Docs. 19-17 at ¶ 58, 24 at ¶ 58.) Carrie Nixon stated that she observed Plaintiff turn around in the parking lot and "head towards Lee Johnson," and "patted [him] on the shoulder and told him to come back when Darrell Johnson got to the store." (*Id.*) Lee Johnson reported that Plaintiff approached him in a threatening manner in the parking lot. (Docs. 19-17 at ¶ 59, 24 at ¶ 59.) Darrell Johnson reported that Lee Johnson stated that belief to him while they were on the telephone.[6] (*Id.*) Darrell Johnson stated that, while on the telephone with Lee Johnson, he heard Plaintiff yelling. (Docs. 19-17 at ¶ 26, 24 at ¶ 26.) Edwin Butler indicated that he believed that they were both wrong and Carrie Nixon reported that they were both talking loudly. (Docs. 19-17 at ¶ 60, 24 at ¶ 60.)

---

[3] Plaintiff denies the truth of the statements, but acknowledges that the statements were made.

[4] Again, Plaintiff acknowledges that the statements were made by those witnesses, but he claims that he "simply repeated the profanity that Lee Johnson used while addressing him. At no time did Plaintiff call Lee Johnson any profanity laden names." (Doc. 24 at ¶ 54.)

[5] Plaintiff admitted that, at some point during the incident, he told Lee Johnson that he had a "smart mouth," but denies using any profanity not used by Lee Johnson. (Doc. 19-7 at 110 lns. 13-16.)

[6] Plaintiff denied approaching Lee Johnson or harboring the intent to get into a physical altercation but admits that he told Lee Johnson, "That's why we are in the predicament we're in now, because of his mouth." (Doc. 24 at ¶ 59.)

7

Prior to Plaintiff's employment with Defendant, it created an employee handbook, which contains an "Open Door, Complaint Procedure, No Retaliation," section. (Docs. 19-17 at ¶¶ 65 & 66, 24 at ¶¶ 65 & 66.) Plaintiff never filed a complaint with a supervisor or any other person with management regarding inappropriate treatment based on race. (Doc. 19-8 at 35-36.) Lee Johnson "might talk to [black people] in a different tone then he [talks] to a white person," once yelled at a group of black employees in front of Plaintiff, and once accused a black female of stealing money although that employee was later determined to not have taken the money. (*Id.* at 30-45.) No other employee witnessed Lee Johnson, Darrell Johnson, or Peggy Gates act in a racially insensitive manner or treat white people differently than black people. (*See* Docs. 19-8 at 30-32, 19-17 at ¶¶ 74-78, 24 at ¶¶ 74-78.)

On December 2, 2010, Plaintiff received training on Defendant's handbook, policies, and procedures, and signed an "Associate Acknowledgement Form." (Docs. 19-17 at ¶ 79, 24 at ¶ 79.) The Standards of Conduct, which are found within the handbook, prohibit refusal to follow instructions of a supervisor, gross misconduct, insubordination, and using insulting, abusive, or similar language or conduct. (Docs. 19-17 at ¶ 81, 24 at ¶ 81.) Defendant's employees are taught not to take "matter[s] into their own hands or engage their supervisor in a 'back and forth' dispute about the issue," and that doing so constitutes insubordination. (Doc. 19-6 at ¶ 50.) Instead, employees are told to file complaints or concerns with members of management. (*Id.* at ¶ 51.) Defendant does not tolerate employees being disrespectful or insubordinate to their supervisors because to allow such would "open the flood gates to employee[s] talking back and disregarding their supervisors' directives." (*Id.* at ¶ 45.) Thus, Defendant requires "its employees to follow the directives of their supervisors, no matter what the supervisor is doing, so long as it is not illegal or unsafe," and to "remain professional towards their supervisors at all times." (*Id.* at ¶¶ 47 & 48.) Also, Defendant's policy is to support supervisors over subordinates in disputes, and "[t]he scales further tip in the supervisor's favor if there is any corroborating evidence from other witnesses supporting the employee's misconduct." (*Id.* at ¶¶ 52 & 53.) In other

words, Defendant has a policy of treating supervisors more lenient than subordinates because "it is critical that [Defendant] support its management's authority over the employees they supervise." (*Id.* at ¶ 44.)

Lee Johnson was Plaintiff's supervisor, and the former had supervisory authority over the latter. (*See* Doc. 19-7 at 105.) In situations where Plaintiff failed to follow the instructions of Lee Johnson, such would constitute insubordination. (*Id.* at 105-06; Doc. 19-6 at ¶ 58.) Although Lee Johnson had the authority to direct Plaintiff's actions, Plaintiff did not have similar authority over Lee Johnson. (Doc. 19-6 at ¶¶ 56 & 57.) Lee Johnson was the second in command at Defendant's Albany, Georgia, store. (*Id.* at ¶ 60.) When Darrell Johnson was away from the store, Lee Johnson was in charge of the entire store. (*Id.* at ¶ 61.) Over the course of a week, Lee Johnson managed 65-70 employees. (*Id.* at ¶ 63.) Also, Lee Johnson was an exempt, salaried employee. (*Id.* at ¶ 64.) Plaintiff was one of several department managers at Defendant's Albany, Georgia, store. (*Id.* at ¶ 62.) Over the course of a week, Plaintiff managed 2-3 employees. (*Id.* at ¶ 63.) Plaintiff was a non-exempt, hourly employee. (*Id.* at ¶ 64.)

## IV.   DISCUSSION

In support of summary judgment, Defendant contends that: 1) Plaintiff has failed to make out his prima facie case because he failed to show that Defendant treated similarly situated employees differently; and 2) even if Plaintiff has demonstrated a prima facie case of discrimination, Plaintiff failed to rebut Defendant's legitimate nondiscriminatory reason for Plaintiff's termination.

### A.   Substantive Merits of Plaintiff's Claims

When a plaintiff seeks to prove a Title VII violation through circumstantial evidence, as does the Plaintiff in the instant case (*see* Doc. 23 at 4), the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Under that framework, in order to establish a prima facie case of discrimination under Title VII, Plaintiff must show that he: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was treated less

9

favorably than similarly situated employees outside of his protected class, or was replaced by someone outside of his protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a prima facie case of discrimination, a presumption of discrimination is created, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the defendant produces such evidence, the plaintiff must demonstrate that the employer's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

### 1. Plaintiff's Prima Facie Case

#### a) Parties' Arguments

Defendant argues that Plaintiff has failed to meet his burden of demonstrating a prima facie case of discrimination because he has not identified a proper comparator and he was not replaced with a person outside of his protected class. (*See* Doc. 19-18 at 7.) Defendant asserts that Lee Johnson, the only potential comparator identified by Plaintiff, is not similarly situated to Plaintiff. (*Id.* at 9-10.) In support of that contention, Defendant states that "Lee Johnson's position as Plaintiff's supervisor, and Food Giant's differing application of policies to its supervisors and subordinates, makes him not similarly situated in all relevant respects." (*Id.* at 10) (emphasis omitted). Defendant argues that, "[a]s an assistant store manager, Lee Johnson had supervisory authority over Plaintiff and had the ability to tell the Plaintiff what to do [and] if Plaintiff is disrespectful or refuses to do what Lee Johnson . . . tells him to do, it constitutes insubordination." (*Id.*) On the other hand, Defendant asserts, Plaintiff did not have such supervisory authority over Lee Johnson and, thus, Lee Johnson's refusal to comply with Plaintiff's directions would not constitute insubordination. (*Id.*) Furthermore, Defendant contends that, Lee Johnson, as assistant store manager, was at times responsible for the management of the entire store and 65-70 people throughout the week whereas Plaintiff was manager of one department and managed only 2-3 people over the course of a week. (*Id.* at 12-13.) Also, Defendant states that "Lee Johnson was an exempt, salaried employee [and] Plaintiff was a non-exempt, hourly employee." (*Id.*)

10

Also, Defendant argues that it has "introduced admissible, non-controverted evidence that it does not treat its assistant store managers and produce managers the same . . . because [Defendant] believes it is critical to support its management's authority over the employees they supervise." (*Id.* at 11.) Defendant claims that it requires that its employees obey the orders of their supervisors unless dangerous or illegal. (*Id.*) According to Defendant, employees are taught to use Defendant's complaint procedures but "they may not take the matter into their own hands or engage their supervisor in a 'back and forth' dispute about the issue." (*Id.* at 11-12.)

Defendant also argues that Lee Johnson's conduct is not sufficiently similar to Plaintiff's conduct as to render Lee Johnson an adequate comparator. (*Id.* at 15.) Defendant asserts that "a brief review of the facts that the Plaintiff has admitted to reveals that he engaged in far more misconduct that he attributes to Lee Johnson." (*Id.* at 16.) Defendant claims that Plaintiff admitted that he told Lee Johnson that he had "a smart mouth," "was not talking to him, he was talking to Charles Ferrell," "[was] not a team player because he thinks he knows everything," "hell no I'm not clocking out because you're not going to talk to me that way," and "that's why we are in the predicament we're in now, because of [Lee Johnson's] mouth." (*Id.*) Further, Defendant states that Plaintiff also admitted that he refused to put the flowers away, left the produce department while Lee Johnson was still talking to him, spoke with Charles Ferrell about the confrontation, and refused to clock out when so instructed. (*Id.*) Defendant claims that, although Plaintiff disputes the accuracy of his former co-workers' statements, he admits that they claimed to have witnessed the incident and relayed their versions of the incident to Defendant. (*Id.* at 16-17.) Also, Defendant states that while "Lee Johnson 'could have probably not been as short' with Plaintiff and 'he could have handled it maybe differently,' " he did not otherwise violate any company policies or standards. (*Id.* at 17.)

Plaintiff argues that "there [are] enough common features between the individuals to allow a meaningful comparison" and he should thus be deemed to have met his burden of identifying a proper comparator. (Doc. 23 at 6 (citations omitted)).

11

Plaintiff states that he and Lee Johnson "were managers and supervised other employees [and] all employees were subject to the same standards and progressive discipline system." (*Id.* at 7-8.) Plaintiff asserts that he, "a black man, was terminated for violating Defendant's standards of conduct [but] Lee Johnson, a white man, received no discipline for violating" those same standards. (*Id.* at 6-7.) Plaintiff states that "there was no mention of Plaintiff's failure to clock out when Darrell Johnson told him he was fired," and Defendant is now "attempt[ing] to make it appear as though Plaintiff was charged with additional infractions so that he could not argue that Lee Johnson engaged in similar conduct." (*Id.* at 7.) Also, Plaintiff claims that Defendant's "convenient argument" that "the assistant manager was treated to a different set of policies because of his title" was "not documented in Defendant's handbook in any section." (*Id.*)

In its Reply, Defendant argues that the record makes clear the Lee Johnson is not a suitable comparator because Plaintiff could be insubordinate towards Lee Johnson but the reverse was not true, Defendant applies its policies differently to employees than it does to supervisors and has a legitimate business reason for such, and Defendant requires its employees to file complaints against supervisors instead of taking "matters into their own hands." (Doc. 26 at 5-6.) Defendant claims that Plaintiff "simply argues that the testimony [regarding the differing treatment of supervisors and their subordinates] is 'convenient' to the Motion for Summary Judgment and that it is not contained in the Employee Handbook." (*Id.* at 5.) Defendant asserts that a "description of 'why' a Supervisor would be favored in a dispute with an Employee is not the nature of information that would be appropriate for an Employee Handbook." (*Id.*) Defendant states that the evidence is unrebutted that Defendant subjects assistant managers and department managers to different standards of conduct even though "Plaintiff . . . had the opportunity to take Food Giant's Human Resources Director's deposition and inquire of her any subject he wished, but chose not to ask her questions along these lines." (*Id.*)

### b) Analysis

Defendant concedes that Plaintiff is a member of a protected class, he was qualified for his position, and he was subject to an adverse employment action. (Doc. 19-18 at 7.) Also, Plaintiff concedes that he was not replaced by someone outside of his protected class. (Docs. 19-17 at ¶ 5, 24 at ¶ 5.) Thus, whether Plaintiff has made a prima facie case of discrimination turns on whether similarly situated employees outside of his protected class were treated more favorably. *See Rice-Lamar*, 232 F.3d at 842. "To make a comparison of the plaintiff's treatment" to the treatment of an employee outside of the plaintiff's protected class, "the plaintiff must show that he and the employee[] are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). A plaintiff must "show that []he was similarly situated to [a purported comparator] in terms of performance, qualifications, and conduct, 'without such differentiating or mitigating circumstances that would distinguish' their situations." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). To make such a showing, the plaintiff and the purported comparator must be similarly situated "in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citing *Holifield*, 115 F.3d at 1562). "The proffered comparator 'must be nearly identical to the plaintiff.' " *Id.*

"To establish a comparator in the disciplinary context, the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff's misconduct." *Aristyld v. City of Lauderhill*, No. 13-12235, 2013 WL 5735159, *2 (11th Cir. Oct. 23, 2013) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). A person is not disqualified from being a comparator simply because he or she does not share the same job title as the plaintiff. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011) (citing *Rioux v. City of*

*Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008)). "The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (citing *Nix v. WLCY Radio/Rahall Commuc'ns*, 783 F.2d 1181, 1186 (11th Cir. 1984)). "When an individual [demonstrates] that he was fired but one outside his class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied against that individual." *Nix*, 738 F.2d at 1186.

The Court finds that Lee Johnson is not a proper comparator and no reasonable jury could find that he and Plaintiff were similarly situated in all relevant respects. At the time of the above-referenced incident, Lee Johnson was assistant store manager and Plaintiff was the manager of the produce department, one of the several departments at the store. When Darrell Johnson, the store manager, was absent, Lee Johnson was the highest ranked employee at the store and, therefore, Plaintiff's supervisor. Over the course of one week, Lee Johnson supervised 65-70 employees whereas Plaintiff only supervised 2-3 employees. Lee Johnson was a salaried, exempt employee, and Plaintiff was an hourly, non-exempt employee.

Also, Lee Johnson's conduct was not comparable to that of Plaintiff. Based on Plaintiff's recollection of the events, he told Lee Johnson that he had a "smart mouth" and that he would not allow Lee Johnson to be rude to him. Plaintiff also admitted that he told Lee Johnson that he would wait until Darrell Johnson returned to the store before handling the shipment of flowers and said, "Hell, no, I'm not clocking out." Because Lee Johnson was Plaintiff's supervisor, Plaintiff was obliged to do as instructed by Lee Johnson. Lee Johnson did not owe the same duty to Plaintiff. If Plaintiff was terminated solely for being rude or using inappropriate language, Plaintiff's argument that he and Lee Johnson were equally culpable would be persuasive. However, Plaintiff was terminated for using abusive language <u>and</u> insubordination. Because Lee Johnson could not have been insubordinate as to his behavior towards Plaintiff, the two individuals' conduct is necessarily distinct.

Lastly, the evidence is undisputed that Defendant applies its standards of conduct differently towards its assistant managers than it does towards its department managers. Defendant supports its management personnel over subordinates in disputes, especially where evidence corroborates the manager's version of events. Defendant chooses to enforce a policy of holding subordinates to stricter standards and supporting managers in disputes because it finds such policy conducive to an environment of respect towards the management and policies of Defendant's store. Here, it is uncontroverted that other employees' statements corroborated Lee Johnson's version of the events and that Lee Johnson was Plaintiff's superior. Thus, the scales weigh heavily against Plaintiff in this situation and likewise preclude a finding that Plaintiff and Lee Johnson were similarly situated in all relevant respects.

### 2. Pretext for Discrimination

#### a) Parties' Arguments

Defendant argues that, even if Plaintiff has met his prima facie burden, he cannot rebut Defendant's legitimate, non-discriminatory reason for his termination—to wit, Plaintiff's insubordinate conduct and abusive language towards Lee Johnson on February 8, 2011. (Doc. 19-18 at 19.) Defendant asserts that the record contains no evidence that its decision to terminate Plaintiff was motivated by discriminatory animus. (*Id.* at 21.) Defendant claims that, instead of pointing to evidence of racial discrimination, "Plaintiff merely speculates that because Darrell Johnson took Lee Johnson's word over his, the decision must have been due to race discrimination." (*Id.* at 21-22.) Defendant alleges that no witness claimed to have witnessed Darrell Johnson or Lee Johnson treat white and black people differently, nor has anyone claimed that this case involves "racial epithets, discriminatory language or use of a racially derogatory insignia." (*Id.* at 22.) Instead, Defendant maintains that it decided that the appropriate action was to terminate Plaintiff based on statements given by Charles Ferrell, Carrie Nixon, Edwin Butler, and Brian Patterson. (*See id.* at 25-28.)

Plaintiff argues that Defendant's asserted reason for his termination is pretext for discrimination because Defendant's "after the fact rationales, much like Defendant's proffer than assistant managers work under different policies than departmental

15

managers, warrant skepticism." (Doc. 23 at 10-11.) Plaintiff states that "Defendant never told [him] that he was being terminated for failing to clock out and leave the instant Lee Johnson told him to do so." (*Id.*) Plaintiff claims that "Defendant's conclusion was based on a biased investigation[, and,] if Plaintiff's actions were in violation of Defendant's Standards of Conduct, so were Lee Johnson's." (Doc. 24 at ¶ 63.) Plaintiff argues that "Lee Johnson cannot provoke the Plaintiff into some alleged action and then use that against him to create a seemingly legitimate rationale for the discipline." (Doc. 23 at 10 (citation omitted)). Lastly, Plaintiff claims that Defendant's " 'investigation' was in actuality a sham to bolster Lee Johnson's trumped up allegations against the Plaintiff.." (*Id.* at 9.) Plaintiff argues that, "[a]s soon as Plaintiff left the premises, as Defendant admits, Lee Johnson is the one who approached Plaintiff's co-workers and told them to write a statement regarding the incident." (*Id.*) Plaintiff asserts that it should come as no surprise that "employees are going to want to please their supervisor and not speak out against him." (*Id.*)

Plaintiff argues that the evidence that he was discriminated against is that (1) he was terminated and Lee Johnson was not, although, in his estimation, their behavior was identical; (2) contrary to Defendant's assertions, he did not cuss at or threaten Lee Johnson, and complied with Lee Johnson's instructions; (3) Lee Johnson had a history of treating white people and black people differently and was involved in the decision to terminate Plaintiff; and (4) Defendant's investigation into the incident that led to Plaintiff's termination was woefully inadequate. In sum, Plaintiff claims that "Defendant's inconsistent application of discipline creates not just doubt as to its sincerity in terminating the Plaintiff but is evidence of its outright hostility towards him." (*Id.* at 13.)

In its Reply, Defendant argues that Plaintiff has failed to point to any evidence that suggests racial bias in its investigation or decision to terminate Plaintiff. (Doc. 26 at 7.) Defendant states that Plaintiff's attempt to cast doubt on the sufficiency of its investigation does not suggest pretext because the statements given to Defendant's

16

"highest-ranking supervisor" "might motivate a reasonable employer" to terminate Plaintiff. (*Id.* at 8.)

### b) Analysis

Even if Plaintiff demonstrated a prima facie case of discrimination, Defendant has the opportunity to "rebut the presumption of discrimination by producing evidence that [there was] a legitimate, nondiscriminatory reason" for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254-55 (citing *Bd. of Trs. Of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978)). Once the defendant meets this burden, the plaintiff must raise a genuine issue of fact as to whether the proffered reason for the adverse employment action is pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804-05. In other words, "once the employer offers evidence of a legitimate, nondiscriminatory reason for the adverse action, 'the *McDonnell Douglas* framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*' " *Kragor*, 702 F.3d at 1308 n.1 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)). "The opportunity provided to a plaintiff to show pretext is simply an opportunity to present evidence from which the trier of fact can find unlawful discrimination." *Id.* Relevant evidence to demonstrate pretext includes the employer's disparate treatment of similarly situated employees outside of the plaintiff's protected class and the defendant's "general policy and practice with respect to minority employment." *McDonnell Douglas*, 411 U.S. at 804-05. However, "[c]onclusory allegations, without more, are not sufficient to raise an inference of pretext . . . where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citing *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996)).

The Court concludes that, even if Plaintiff has met his burden to demonstrate a prima facie case of discrimination, he has failed to rebut Defendant's legitimate,

nondiscriminatory reason for terminating Plaintiff. Defendant has submitted statements from Plaintiff's co-workers who were present the day of the incident—Brian Patterson, Carrie Nixon, Edwin Butler, and Charles Ferrell. In sum, the statements asserted that Plaintiff refused to clock out when instructed, walked away from Lee Johnson while the two were having a conversation, told Lee Johnson he had a "smart mouth" and that Plaintiff would not permit Lee Johnson to speak to him in a rude manner, and confronted Lee Johnson in the parking lot. Importantly, Plaintiff has not disputed that the above-referenced former co-workers made the statements allegedly relied on by Defendant. Also, there is no evidentiary dispute that Lee Johnson did not participate in the decision to terminate Plaintiff. Thus, the evidence is undisputed that Defendant relied on the above-referenced statements in terminating Plaintiff and not any predilections of Lee Johnson. Even if factually inaccurate or coerced by Lee Johnson, Defendant terminated Plaintiff on the basis of those statements—not on the basis of his race or skin color. Further, other than unsupported, conclusory statements, Plaintiff has offered no evidence to suggest that Defendant terminated Plaintiff on the basis of a protected characteristic.

As to Plaintiff's purported evidence of discrimination, for the reasons stated above, Plaintiff and Lee Johnson are not proper comparators. The responsibilities bestowed upon the positions occupied by Plaintiff and Lee Johnson, Defendant's treatment of individuals in those positions, and their respective conduct suffer from too many distinctions for the two individuals to be properly compared. Second, Plaintiff's assertions that he did not engage in the conduct Defendant ascribed to him misses the point. Plaintiff does not controvert Defendant's assertion that his co-workers made the statements that Defendant claims it relied upon. Even if Plaintiff's co-workers were mistaken in their statements, it does not take away from the fact that those individuals made the statements.

Third, there is not sufficient evidence in the record to indicate that Lee Johnson had a history of treating white people and black people differently. The only evidence in the record to suggest Lee Johnson, or any other employee of Defendant, treated white

people and black people differently is deposition testimony of Plaintiff. However, that testimony is too speculative for the Court to conclude that Plaintiff met his burden of rebutting Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff. Plaintiff stated that he once observed Lee Johnson "yelling at some [black] guys and saying something smart under his mouth to them" but could not remember what he said or any other relevant circumstances. Plaintiff also stated Lee Johnson "might talk to [black people] in a different tone than he [would] talk to a white person" but could not remember any details of such occasions. Lastly, Plaintiff stated that Lee Johnson once accused a black female employee of stealing money but it was later discovered that that employee did not steal money. However, Plaintiff does not have any personal knowledge of why such accusations were made or why that employee was terminated. Because Plaintiff's accusations regarding Lee Johnson's purported racial biases are speculative and tenuous, they are insufficient to suggest that Lee Johnson harbored racial bias against him. Further, even if Lee Johnson harbored such bias, Lee Johnson did not participate in the decision to terminate Plaintiff and there is no evidence that any other individual in Defendant's employ harbored discriminatory bias.

Lastly, whether the investigation into the incident that resulted in Plaintiff's termination was woefully inadequate is relevant only to the extent that Defendant conducted an investigation to cover up an illegal motivating factor for terminating Plaintiff. It is not illegal for Defendant to have allowed Lee Johnson and Darrell Johnson to conduct the interviews, to refuse to take Plaintiff's statement in writing, or to permit a supervisor's presence to serve as a potential threat to employees' willingness to be honest unless, concomitantly, Defendant terminated Plaintiff for an illegal reason. An employer may fire an employee for a good reason, bad reason, factually incorrect reason, or no reason at all—as long as it is not an illegal reason. Thus, although Plaintiff may be correct that Defendant's investigation was one-sided and inadequate, there is no evidence to suggest that the investigation—or the reasons offered by Plaintiff for his termination—was used as pretext for discrimination.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 19) is **GRANTED.** It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by his Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this  21st  day of January 2014.

                                                /s/ W. Louis Sands
                                                W. LOUIS SANDS, JUDGE
                                                UNITED STATES DISTRICT COURT